IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES G. WEBBER,** | : | |
| **Plaintiff** | : | **Civil No. 12-CV-2558** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Comm'r of Soc. Sec.,** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendant** | : | |

## M E M O R A N D U M

In this appeal from a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income, Plaintiff claims the administrative decision concluding that he has not been under a disability as defined by the Social Security Act is not supported by substantial evidence and contains errors of law. For the following reasons, the court will affirm the decision of the Commissioner.

## I.       Background

### A.       Procedural History

On May 8, 2007, Plaintiff, James G. Webber, protectively filed applications for Title XVI Supplemental Security Income ("SSI") and Title II Disability Insurance Benefits ("DIB"). (Doc. 1, ¶ 5; Doc. 9, ¶1.) Plaintiff claimed disability beginning on May 1, 2006 (Doc. 10-5, p. 2 of 29), and listed the illnesses, injuries, or conditions that limited his ability to work as "bulging disc, degenerative disc disease and arthritis, cramping in feet up through the knees, severe back pain, continuous numbness in arms, hypertension, . . . sharp, shooting pain in . . . biceps, [and] mild depression." (Doc. 10-6, p. 3 of 58.) He added that severe pain caused him "great distress when [he] tries to bend, squat, sitt [sic] and standing [sic]." (*Id.*)

The Social Security Administration initially denied Plaintiff's application by decision dated September 7, 2007. (Doc. 10-4, pp. 2, 7 of 42.) On October 5, 2007, Plaintiff filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Doc. 10-4, p. 14 of 42.) ALJ Timothy Wing held a hearing on November 18, 2008, at which Plaintiff and Karen Kane, a vocational expert, testified. (Doc. 10-2, p. 69-104 of 104.) ALJ Wing issued an unfavorable decision to Plaintiff on November 26, 2008 (Doc. 10-3, pp. 15-18 of 21), which was remanded for further proceedings by the Appeals Council by order dated June 25, 2010 (*Id*. at p. 19 of 21). On November 16, 2010, ALJ Sridhar Boini conducted a supplemental hearing, at which time both Plaintiff and Gerald Keating, a vocational expert under contract with the Office of Disability Adjudication and Review, testified. (*See* Doc. 10-2, pp. 28-68 of 104.)

### B. Plaintiff's General Background

Plaintiff was born in the United States on July 27, 1981 (Doc. 10-6, p. 9 of 58), and at all times relevant to this matter was considered a "younger individual,"[1] whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. § 404.1563(c). Plaintiff has a seventh grade education and is able to communicate in English. (Doc. 10-6, p. 7 of 58; Doc. 10-2, p. 75 of 104.) As of the date of the hearings, Plaintiff was approximately five feet and eleven inches tall and weighed between 276 and 284 pounds.[2] (Doc. 10-2, p. 75 of 104.) Plaintiff lived with his disabled wife and three-year-old daughter. (*Id.* at p. 76 of 104.)

---

[1] The Social Security regulations use the term "younger individual" to denote an individual 18 through 49. *See* 20 C.F.R. § 404.1563.

[2] The court is aware that Plaintiff weighed, at times, in excess of 300 pounds.

Plaintiff had prior relevant work experience as a warehouse packer and dishwasher. (Doc. 10-6, p. 4 of 58.)

## C. Medical Records

### 1. Musculoskeletal Impairments

Plaintiff underwent a L4-S1 lumbar decompression with L5 laminectomy in November 2005 (Doc. 10-8, p. 3 of 56), and was thereafter cleared for regular duty work in February 2006 (Doc. 10-7, p. 22 of 93). In May 2007, Plaintiff reported that he was experiencing back pain after he started a new job that required him to lift 24 pounds. (*Id*. at p. 24 of 93.) His treating physician, Dr. Emma Rubin, temporarily restricted Plaintiff from working. (*Id*.) Two months later, Plaintiff returned to Dr. Rubin with complaints of chronic headaches. (*Id*. at p. 25 of 93.)

Three months thereafter, Plaintiff returned to Dr. Rubin with reports of back pain, for which Dr. Rubin ordered an MRI. (*Id.* at p. 69 of 93.) The MRI showed post-operative changes at the L5 vertebral level, with minimal enhanced scar tissue, degenerative disc disease at the L4-5 and L5-S1 levels, a stable small right paracentral disc protrusion that caused a minimal impression on the thecal sac, a stable small central disc protrusion at the L5-S1 level which was causing mild narrowing of the anterior epidural fat, and mild stable neural foraminal narrowing at the L4- and L5-S1 levels. (*Id.* at p. 73 of 93.) Dr. Rubin treated Plaintiff by way of prescribing medication. (*Id*. at p. 64 of 93.)

On August 17, 2007, Dr. Barry Minora, a consulting physician, indicated that Plaintiff complained of pain in the center of his lower back and had limited range of motion of his lumbar spine, but had full range of motion of his

cervical spine, and of his upper and lower extremities.  (*Id.* at p. 39 of 93.)  With respect to Plaintiff's physical abilities, Dr. Minora found, *inter alia*, as follows:

> [Plaintiff] had 5/5 strength bilaterally in all extremities. His DTRs were intact.  His ability to perform fine and dexterous movements with his upper extremities were within normal limits.  Fine and gross hand movements of both within normal limits.  The gait and neurologic status was within normal limits.  He had 5/5 strength in all extremities.  As far as his range of motion and physical activities chart, he had normal range of motion in the shoulders, elbows, wrists, and fingers.  Normal range of motion was noted on supination and pronation.  Normal ranges of motion with wrist with palmer flexion, radial deviation, ulnar deviation, and dorsiflexion.  The was normal range of motion with the knee with flexion, extension and normal range of motion with the knee with flexion, extension and normal range of motion of the hip with forward flexion and backward extension.  Interior and exterior rotation, abduction and adduction were all within normal limits.  At the cervical spine, lateral flexion, flexion, extension, and rotation all within normal limits. The lumbosacral spine was limited to approximately 40 degrees with flexion, extension, and lateral flexion was normal with left and right.  Dorsiflexion of the ankle and plantar flexion were also within normal limits.

(*Id.* at p. 40 of 93.)  Dr. Minora presented the following opinion regarding Plaintiff's work-related physical abilities:

> [Plaintiff] could probably frequently lift or carry 10 pounds.  Standing and walking, I saw no limitation. Sitting, I saw no limitation.  Pushing and pulling would be limited in both the upper and lower extremities because of previous back injury to approximately 10 pounds.  He can occasionally bend, kneel, stoop, crouch, bounce, climb, or crawl.  Other physical functions, I saw no limitations. Environmental restrictions, there was no limitation.

(*Id.*)  Several months thereafter, Plaintiff was evaluated by Dr. P. Shripathi Holla, a neurological surgeon.  (*Id.* at p. 62 of 93.)  Dr. Holla noted that Plaintiff was not currently taking medication, and did not need surgery, but that losing approximately fifty pounds would "help him substantially." (*Id.*)

Plaintiff saw Dr. Rubin numerous times during 2008; however, his reports of back pain were inconsistent.  (*See generally id.*)  Dr. Rubin did not find any medical or physiological abnormalities related to Plaintiff's back.  (*See id.*)  Plaintiff requested Dr. Rubin to complete disability paperwork on November 10, 2008.  (Doc. 10-8, p. 21 of 56.)  Dr. Rubin identified extreme functional limitations inconsistent with full time work.  (*Id.* at pp. 18-20 of 56.)

In Plaintiff's follow-up visit to Dr. Rubin in February 2009, Plaintiff claimed he had intermittent pain in his neck.  (*Id.* at p. 36 of 56.)  Plaintiff also complained of back pain "since last Wednesday," and requested a medication change to treat the pain, for which Dr. Rubin prescribed ibuprofen.  (*Id.* at p. 35 of 56.)  During a follow up two weeks thereafter, Plaintiff reported that he felt much better.  (*Id.* at p. 34 of 56.)  Plaintiff next saw Dr. Rubin in March 2010, and complained of numbness in his left upper arm, but Dr. Rubin noted that Plaintiff was not in acute distress.  (*Id.* at p. 33 of 56.)  During his next follow up in July 2010, Plaintiff indicated he had pain in left shoulder, but again was not in acute distress.  (*Id.* at p. 32 of 56.)  In August 2010, Plaintiff visited Dr. Rubin again following a fall injuring his left ankle.  (*Id.* at p. 31 of 56.)  The medical records related to that visit do not indicate that Plaintiff complained of back pain.  (*Id.*)  On December 5, 2010, Plaintiff reported to the Community Medical Center with complaints of sharp, non-radiating back pain that had began the previous day while Plaintiff was bending over.  (Doc.

10-9, p. 59 of 67.)  Plaintiff was treated with pain medications, which he reported were effective in reducing the pain.  (*Id.* at pp. 62-63 of 67.)  An MRI on Plaintiff's spine noted that vertebral height was normal without compression deformity and that visualized disk spaces were unremarkable with no evidence of fracture.  (*Id.* at p. 67 of 67.)

## 2. <u>Psychological Impairments</u>

With regard to Plaintiff's mental health issues, records show that Plaintiff was evaluated in October 2005, and diagnosed as having a depressive disorder, not otherwise specified, and a global assessment functioning score of 65. (Doc. 10-7, p. 15 of 93.)  Although prescribed, Plaintiff did not take medication because the "situation that cause[d] the anxiety and depression" was eliminated after Plaintiff's "mean neighbor moved."  (*Id.* at p. 19 of 93.)  Thus, in November 2005, Plaintiff reported that he felt "great." (*Id.*)

On August 2, 2007, Plaintiff saw Dr. Ali Nourian for a consultative psychological evaluation.  (*Id.* at p. 31 of 93.)  Plaintiff reported that he had been experiencing depression secondary to his being unemployed.  (*Id.* at p. 32 of 93.) The record contains Plaintiff's self reports of back pain, which he claimed adversely affected his sleep. (*Id*).  Dr. Nourian reported that Plaintiff had difficulty with concentration and persistence, mostly due to his weight problem and chronic back pain, and was diagnosed as having a depressive disorder, not otherwise specified, secondary to a medical problem.  (*Id.* at pp. 34-35 of 93.)

Dr. William Flock, a state agency psychologist, performed a psychological evaluation of Plaintiff as part of his examination for the social security administration on August 23, 2007, and stated that Dr. Nourian's narrative report did

not support the identified limitations.  (*Id.* at p. 54 of 93.)  Moreover, Dr. Flock opined that Plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and zero episodes of decompensation.  (*Id.* at p. 52 of 93.)  Dr. Flock also concluded that Plaintiff could follow simple commands, accept supervision, adapt to changes, and maintain persistence and pace.  (*Id.* at p. 54 of 93.)  Dr. Flock opined that Plaintiff did not suffer from a severe impairment.  (*Id.* at pp. 42, 54 of 93.)

On February 11, 2008, Plaintiff visited the Scranton Counseling Center for purposes of a psychological evaluation.  (*Id.* at p. 79 of 93.)  The record indicates Plaintiff was referred to the institution by his lawyer, listed the chief complaint as ongoing depression, and listed several psychological stressors, including his attempts to get disability, financial issues, and arguing with his wife.  (*Id.* at p. 80 of 93.)  Plaintiff's depression was treated by prescribed medications and adult outpatient therapy, and Plaintiff was ultimately discharged in March 2010 as improved.  (Doc. 10-8, p. 29 of 56.)  In August 2010, Plaintiff returned to Scranton Counseling Center, with the chief complaint of anger issues.  (*Id.* at p. 43 of 56.)  Plaintiff's mood, affect, and thought processes were described as anxious, appropriate, and coherent, respectively.  (*Id.* at p. 52 of 56.)  Plaintiff appeared to have good judgment, adequate concentration, and adequate attending skills.  (*Id.* at p. 53 of 56.)  At this time, Plaintiff had a global assessment functioning score of 55, and again was diagnosed as having a depressive disorder, not otherwise specified.  (*Id.* at p. 54 of 56.)

### C.  Hearing Testimony

Plaintiff testified that, although the back surgery in November 2005 initially provided him relief from pain, he was unable to work due to his suffering from, what amounted to, debilitating pain in his lower back and depression. (Doc. 10-2, p. 37 of 104.)  Specifically, Plaintiff stated:

> Well, I spend most of my time lying down.  It's the only way I'm comfortable.  I'm constantly up and down during the day and the night.  Honestly, just after that last attempt to work I'm actually afraid to try because I just don't want to feel that experience ever again.

(*Id.* at p. 78 of 104.)  Plaintiff's aversion related to his last attempt to work in a manufacturing plant, which lasted approximately four hours. (*Id.* at pp. 41-43 of 104.)  Plaintiff testified that, during that attempt in 2007, he was tasked with removing boxes from a conveyer belt and placing them on a pallet. (*Id.*)  In less than three hours of work, he experienced intense pain in his lower back, which subsequently spread down to his knees and calves. (*Id.* at p. 77 of 104.)  Plaintiff also experienced a "throbbing in [his] shoulders and a numbness in [his] arms which he [couldn't] explain." (*Id.*)  According to Plaintiff, this was the only time he experienced that type of pain. (*Id.*)

Plaintiff testified that he took Vicodin "off and on" for multiple years, and had gone without it for periods of several months while managing his pain with Tylenol. (*Id.* at pp. 81-82 of 104.)  Plaintiff does minimal household chores and the majority of his daily routine is spent watching television. (*See id.* at pp. 85-91 of 104.)  Plaintiff admitted that he can generally lift and carry between twenty and thirty pounds, but testified that he has "the biggest problem . . . lifting while bend[ing] over." (*Id.* at p. 87 of 104.)

8

Plaintiff claimed that he could not work in a seated position because he was rarely comfortable sitting and had to constantly move. (*Id.* at pp. 53-54 of 104.) Plaintiff testified that he could sit for two and a half hours before having to stand up or lay down for, what he estimated to be, an hour. (*Id.* at p. 55 of 104.) Plaintiff testified that he had not taken psychological medication for approximately six months, and stopped going to counseling due to his inability to pay for a parking meter. (*Id.* at p. 58 of 104.)

During the supplemental hearing in 2010, the ALJ posed the following hypothetical to Gerald Keating, a vocational expert:

> [A]ssume an individual the same age, educational level, work history as [Plaintiff] who at all times during the period of consideration would be capable of performing at best sedentary level work set forth in a stable work environment not subject to any more than occasional work setting changes. The individual would be able to perform the general requirements for sedentary work as described in the Dictionary of Occupational Titles except that the individual would require a self-directed sit[/]stand option. I would also indicate that from a postural standpoint, the individual should be able to at most be able to accomplish stooping and crouching and kneeling on an occasional basis. I would relegate crawling and climbing of ramps, I'm sorry, climbing of ladders or scaffolds or ropes to emergent and ramps or stairs to occasional and the individual would have the exertional capacity to utilize the upper extremities without restriction except with respect to the body posturing of the neck the individual should not be required to place the neck in a forward flex position for continuous periods of time without the opportunity for relaxation of that forward flex position . . . . The individual would be able to perform the activities required, again with the upper extremities without restriction as far as handling, fingering, feeling, grasping. I would restrict overhead

> reaching to occasional. In terms of the work setting the
> work should be of an unskilled nature. Essentially
> simple[,] routine work tasks.

(*Id.* at pp. 62-63 of 104.) Based on the hypothetical, Mr. Keating provided the

following testimony regarding available occupations in the northeast Pennsylvania

region:

> An assembler, small products sedentary, unskilled SVP of
> 2, approximately 1,500 to 1,600. I'm going to indicate a
> sorter and this is clerical. Now there's variations to this
> industry and I will offer it at the sedentary, unskilled, SVP
> of 2. The numbers [are] 500 to 600 and three I'm going to
> indicate a general cashier also known as a cashier II in the
> DOT and I will offer that as sedentary, unskilled, SVP of 2
> and that's approximately 1,700, 1,800.

(*Id.* at p. 63 of 104.) Thus, based on the hypothetical, Mr. Keating suggested that

jobs suitable for Plaintiff's limitations existed in the regional economy. (*Id.*)

## II.        Standard of Review

A district court's review of the Commissioner's decision is quite

limited. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The scope of

review by this court is restricted to determining whether the Commissioner applied

the correct legal standards and whether the record, as a whole, contains substantial

evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). Findings of fact by the

Commissioner are considered conclusive provided they are supported by "substantial

evidence," a standard that has been described as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Reefer v.

Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson*, 402 U.S. at 401).

"A single piece of evidence will not satisfy the substantiality test if the [ALJ]

10

ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

This court does not undertake a *de novo* review of the decision and does not re-weigh evidence presented to the Commissioner. *Schoengarth v. Barnhart*, 416 F. Supp. 2d 260, 265 (D.Del. 2006) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). The substantial evidence standard is differential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence. *See id.* If the decision is supported by substantial evidence, the reviewing court must affirm the decision, even if the record contains evidence which would support a contrary conclusion, *Panetis v. Barnhart*, 95 F. App'x 454, 455 (3d Cir. 2004), or if the court itself "would have decided the factual inquiry differently," *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.     **Discussion**

At the core of each of Plaintiff's arguments is the ALJ's finding that Plaintiff's reports and testimony of the severity and debilitating nature of the pain were exaggerated and not credible. Before addressing Plaintiff's arguments, the court will first discuss the administrative framework applicable to determinations of benefit eligibility and then set forth the key points of the ALJ's decision.

### A.     **Administrative Framework**

In determining whether a claimant is eligible for supplementary security income, the burden is on the claimant to show that she has a medically determinable physical or mental impairment (or combination of such impairments) which is so

severe he is unable to pursue substantial gainful employment[3] currently existing in the national economy.[4] Applicable to Plaintiff, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). A claimant is considered to be unable to engage substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). To receive disability insurance benefits, a claimant must show that he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). In the instant case, the Commissioner does not dispute that Plaintiff satisfies the first two non-medical requirements and the parties do not object to the ALJ's finding that Plaintiff's date of last insured for purposes of receiving disability benefits was December 31, 2008. (Doc. 10-2, p. 14 of 104; Doc. 15, p. 2 of 29.)

---

[3] According to 20 C.F.R. 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the type of work usually done for pay or profit.

[4] A claimant seeking supplemental security income benefits must also show that his income and financial resources are below a certain level. 42 U.S.C. § 1382(a).

To determine a claimant's rights to either SSI or DIB,[5] the ALJ conducts a formal five-step evaluation process:

> (1) if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

> (2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

> (3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

> (4) if the claimant retains sufficient residual functional capacity ("RFC")[6] to perform his past relevant work, he is not disabled; and

> (5) if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional, or national economy, he is not disabled.

See 20 C.F.R. § 416.920(a)(4); see also Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000). The claimant bears the burden of proof for steps one, two, and four of this test. Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). The Commissioner bears the burden of proof for the last step to show that the claimant is capable of performing

---

[5] The same test is used to determine disability for purposes of receiving either DIB or SSI benefits. Burns v. Barnhart, 312 F.3d 113, 119 n.1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both programs.

[6] Briefly stated, RFC is the most a claimant can do despite his recognized limitations. Social Security Ruling 96-9p defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule.

other jobs existing in significant numbers in the national economy. *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

When challenging the ALJ's conclusion regarding the third step, the claimant bears the burden of proof. *See Crostly v. Astrue*, Civ. No. 10-cv-0088, 2011 WL 5026341, *2 (W.D. Pa. Oct. 21, 2011) (citing *Davis v. Commissioner of Soc. Sec.*, 105 F. App'x 319, 323 (3d Cir. 2004)); *see also Ramirez*, 372 F.3d at 550. Specifically, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Moreover, for a claimant to prove that his impairment is equivalent to a listing, he must "proffer medical findings which are equal in severity to *all* the criteria for the one most similar listed impairment." *Stremba v. Barnhart*, 171 F. App'x 936, 938 (3d Cir. 2006) (citing *Sullivan*, 493 U.S. at 530) (emphasis added).

## B. ALJ's Decision

Following the prescribed analysis, ALJ Boini first concluded Plaintiff has not engaged in substantial gainful activity since May 1, 2006, the alleged onset date. (Doc. 10-2, p. 15 of 104.) In resolving step two, the ALJ found that, as of the date of the hearing, Plaintiff suffered from four severe impairments: degenerative disc disease and disc bulging in his lumbar spine, disc bulging and herniation in his cervical spine, obesity, and a depressive disorder. (*Id.* at p. 16 of 104.)

At step three, the ALJ concluded none of Plaintiff's impairments, considered singly or in combination, satisfied the criteria of any relevant Listing. (*Id.*) That is, although Plaintiff reported he experienced significant pain in his back,

14

the medical records demonstrate Plaintiff did not exhibit physical abnormalities. (*Id.*)  In support of his conclusion, the ALJ cited Dr. Minora's findings, indicating that Plaintiff complained of pain in the center of his lower back and had limited range of motion of his lumbar spine, but had full range of motion of his cervical spine, and both his upper and lower extremities.  The ALJ also referenced Dr. Minora's reporting that Plaintiff had 5/5 motor strength, a normal gait, and no neurological deficits, and opinion that Plaintiff did not have any limitations regarding his ability to stand, walk, or sit.  Moreover, although the ALJ found, using the technique required in reviewing claims of mental impairments, that Plaintiff met the threshold diagnostic requirements of a depressive disorder, not otherwise specified, he concluded that Plaintiff did not have the marked or extreme limitations as required by Section 12.04.  (*See id.* at pp. 15-21 of 104.)

> At step four, the ALJ concluded Plaintiff:
>
> [H]as the residual functional capacity to perform, at best, sedentary level work set forth in a stable work environment that is not subject to any more than occasional work setting changes. . . . He could perform the activities required with the upper extremities without restriction as far as handing, fingering, feeling and grasping; but he could only occasionally reach overhead.  In terms of the work setting, the work should be of an unskilled nature, essentially of simple, routine work tasks.

(*Id.* at p. 17 of 104.)  The ALJ further concluded that Plaintiff could not perform his past relevant work as a dishwasher or warehouse packager, both of which are classified as medium in exertion and unskilled in nature.  (*Id.* at p. 21 of 104.)  However, based on Plaintiff's young age, level of education, work experience, and residual functional capacity, as well as the vocational expert's testimony, the ALJ

concluded that there were numerous light, unskilled jobs existing in the economy which Plaintiff could perform despite his limitations, for example, an assembler of small products, sorter for clerical, and general cashier/cashier II. (*See id.* at p. 21 of 104.)

The ALJ further acknowledged Plaintiff's claims of experiencing pain, and noted that Plaintiff underwent a course of physical therapy subsequent to surgery and did relatively well. (*Id.* at p. 17 of 104.) The ALJ also noted that Dr. Emma Rubin, Plaintiff's treating physician, restricted Plaintiff from any lifting, but did not credit Dr. Rubin's opinions because they were not consistent with the objective evidence of record, and were not "linked to specific physiological pathologies which would deprive someone of any lifting ability whatsoever." (*Id.* at p. 18 of 104.) Instead, the ALJ credited the opinion of Dr. Minora because it was more consistent with the objective medical evidence, which indicated, *inter alia*, a decrease in size of the disc bulge at the L4-5 level and included physical exam findings from treating physicians that were within normal limits. (*Id.*) Finally, although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, he discredited Plaintiff's statements concerning the intensity, duration, and limiting effects of the alleged symptoms as inconsistent with the balance of the record. (*See id.* at p. 21 of 104.)

### C.  Plaintiff's Arguments

Plaintiff raises several arguments in support of his appeal. Specifically, he contends that the ALJ improperly: (1) disregarded the opinion of Plaintiff's treating physician; (2) disregarded the consultative psychiatrist's opinion for an erroneous reason; (3) failed to incorporate a comprehensive representation of

Plaintiff's limitations when posing a hypothetical scenario to the vocational expert; and (4) assessed the credibility of Plaintiff. The court will address these contentions in an order to facilitate their discussion.

### 1. **Plaintiff's Credibility**

Plaintiff contends that the ALJ did not properly assess his credibility. Essentially, Plaintiff contends that the ALJ erred in finding that Plaintiff could perform work at the sedentary exertional level of an unskilled nature and that his testimony concerning the intensity, duration, and limiting effects of the pain was not credible. Pursuant to regulations promulgated by the Commissioner, "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529). If the ALJ concludes a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must then attempt to ascertain and evaluate the severity of the claimant's pain as well as the degree to which it may limit the claimant's ability to perform various types of work. *Id.*; *Scatorchia v. Commissioner of Soc. Sec.*, 137 F. App'x 468, 471 (3d Cir. 2005). This inquiry "requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)). When the ALJ evaluates the claimant's credibility, he may consider the individual's daily activities and the consistency of the individual's own statements. *Scatorchia*, 137 F. App'x at 471. An ALJ is not required to accept a plaintiff's claims regarding his limitations. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983) (providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to

make). It is well-established that an ALJ's findings based on the credibility of the claimant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness' demeanor. *Chromey v. Astrue*, Civ. No. 4:11-cv-0103, 2012 WL 123548, *6 (M.D. Pa. Jan. 17, 2012) (citing *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

Instantly, in evaluating Plaintiff's claims, the ALJ appropriately considered Plaintiff's medical impairments, the resultant symptoms, and their limiting effect on Plaintiff. Although the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce pain, he concluded that Plaintiff's self-reported claims of debilitating pain were inconsistent with the objective medical evidence. To support this conclusion, the record contains evidence that: (1) Plaintiff saw his treating physician relatively infrequently, to wit, only once every three months; (2) Plaintiff inconsistently took prescription pain medication, which he had gone without for at least five months while managing his pain with Tylenol; (3) Plaintiff's medical records showed negative muscle atrophy in any of Plaintiff's extremities and that Plaintiff's fine and gross movements were within normal limits as of August 2007; (4) the MRI of Plaintiff's lumbar spine showed the disc bulge had actually decreased in size; and (5) that the only evidence of pain arose from Plaintiff's self-reports, while the physical examination findings were within the normal ranges. Moreover, as Defendant highlights in her opposing brief, Plaintiff's claims of total debilitating pain are belied by certain medical records, namely that Plaintiff injured his left ankle as a result of his "stepp[ing] in [a] hole in [the] roof of an apartment building" on or around July 28, 2010. (*See* Doc.

10-9, p. 4 of 67.)  Substantial evidence supports the ALJ's conclusion that Plaintiff's claims of essentially totally disabling pain were not entirely credible.  Therefore, the court will uphold the ALJ's decision in this respect.

## 2.    Treating Physician

Plaintiff next argues that the ALJ improperly weighed his treating physician's opinion.  Specifically, Plaintiff contends that the ALJ "disregarded the well-supported opinion of [Dr. Emma Rubin]."  (Doc. 14, p. 5 of 21.)  Dr. Rubin treated Plaintiff since 2006 and provided a Medical Source Statement on November 10, 2008, regarding the nature and severity of Plaintiff's impairments and the limiting effects thereof.  (*See* Doc. 10-8, pp. 18-21 of 56.)  Dr. Rubin opined that Plaintiff could sit for about two hours and stand and walk for less than two hours during the course of an eight-hour day, needed to shift at will from sitting to standing every ten to twenty minutes, and needed to lie down at unpredictable intervals.  (*Id.* at p. 18-19 of 56.)  Dr. Rubin further opined that Plaintiff could occasionally lift twenty pounds, frequently lift less than ten pounds (*Id.* at p. 18 of 56), and that Plaintiff's abilities to reach overhead, grossly manipulate an item weighing in excess of fifteen pounds, and push an item in excess of 25 pounds were impaired due to the pain in his back (*Id.* at p. 19 of 56).  Dr. Rubin cited only to Plaintiff's subjective reports of pain, despite the form's instruction that the physician identify the particular medical findings that supported her opinions.  (*Id.*)

The Third Circuit has explained, "the opinions of treating physicians should be given great weight[.]" *Johnson v. Commissioner of Soc. Sec.*, 398 F. App'x 727, 735 (3d Cir. 2010) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).  However, an ALJ "may reject a treating physician's opinion outright . . . on

the basis of contradictory medical evidence." *Johnson*, 398 F. App'x at 735 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.927(d)(2). Furthermore, a physician's opinion as to whether a claimant is capable of working or should receive disability benefits is not entitled to controlling weight because that determination is reserved for the Commissioner. *Russo v. Astrue*, 421 F. App'x 184, 191 n.5 (3d Cir. 2011) (citing *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994) ("We recognize, of course that a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue.")); *see also* 20 C.F.R. § 416.927(e).

Here, Plaintiff contends that the ALJ did not properly credit his treating physician's opinion regarding his ability to work. The treating physician's opinion as to this ultimate issue, *i.e.*, Plaintiff's ability to work, however, is not controlling because such conclusions are expressly reserved for the Commissioner. *Russo*, 421 F. App'x at 191. Moreover, the ALJ properly found that the treating physician's opinion was contradicted by objective medical evidence of record. *See Becker v. Commissioner of Soc. Sec.*, 403 F. App'x 679, 686 (3d Cir. 2010) (citing *Plummer*, 186 F.3d at 429, for the proposition that an ALJ "may reject the treating physician's assessment if such rejection is based on contradictory medical evidence").

While pain may be a reasonably expected symptom of Plaintiff's impairments and adequate to support a conclusion of disabled, it was clear that Dr. Rubin's opinions were based solely upon Plaintiff's subjective reports. Those opinions formed the basis for Dr. Rubin's recommendations regarding the amount of physical exertion Plaintiff could endure. Dr. Rubin's opinion, however, is contradicted by other evidence of record based on more objective evaluations. For

example, despite Plaintiff's claims of constant debilitating pain, on December 5, 2010, Plaintiff arrived via ambulance to the emergency department of the Community Medical Center in Scranton, Pennsylvania, and reported that he had back pain that had onset only 24 hours prior while he was bending. (Doc. 10-9, p. 59 of 67.) According to the medical records, Plaintiff reported that the back pain was mild (*Id.* at p. 62 of 67), and lessened due to Plaintiff's taking of medication (*Id.* at p. 63 of 67).

Furthermore, with respect to Plaintiff's physical abilities, Dr. Minora found that Plaintiff had 5/5 motor strength, a normal gait, and no neurological deficits. (Doc. 10-7, p. 40 of 93.) With respect to Plaintiff's work-related physical activities, Dr. Minora opined that Plaintiff did not have any limitations regarding his ability to stand, walk, or sit, and had the ability to occasionally bend, kneel, stoop, crouch, bounce, climb, and crawl. (*Id.*)

As stated, the objective medical evidence does not support, and indeed contradicts, Plaintiff's claim that he continuously suffered from debilitating back pain. Because Plaintiff's treating physician's opinions and recommendations were based solely on Plaintiff's subjective reports of debilitating back pain, the ALJ was justified in discrediting Dr. Rubin's opinions based upon Plaintiff's complaints that the ALJ found to be exaggerated, *see supra* Part III.C.1, and was further justified in crediting the opinion of Dr. Minora, which was supported by objective medical evidence. Accordingly, the ALJ appropriately considered the treating physician's opinion, and the court will uphold the ALJ's decision in this respect because it is supported by substantial evidence.

### 3. Consultative Psychiatrist's Opinion

Plaintiff next argues that the ALJ erred by discounting the testimony of Plaintiff's consultative examining psychiatrist ("CEP") regarding Plaintiff's limitations. (*See* Doc. 14, pp. 11-12 of 21.) Specifically, Plaintiff's CEP, Dr. Ali Nourian, diagnosed him with a depressive disorder, not otherwise specified, and opined that Plaintiff was "very limited in terms of handling stress or tolerating frustration," and had a marked limitation in his ability to respond appropriately to work pressures in a usual work setting. (Doc. 10-7, pp. 35-36 of 93.) Plaintiff argues that the ALJ improperly rejected Dr. Nourian's assessment after concluding that the CEP's evaluation was based on "Plaintiff's statements regarding his own estimate of his functional capabilities." (Doc. 10-2, p. 19 of 104.) Thus, Plaintiff argues the ALJ rejected Dr. Nourian's opinion for the wrong reasons.

The Third Circuit has explained that "[l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible – the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Rutherford*, 399 F.3d at 554; *see also Diaz*, 440 F. App'x at 72.

Here, the ALJ discredited Dr. Nourian's diagnostic impression, finding that Dr. Nourian's opinions were based on Plaintiff's own statements and that Dr. Nourian did not identify abnormal findings from his physical examination. (*See* Doc. 10-7, pp. 33-34 of 93.) Indeed, Dr. Nourian failed to set forth any medical or clinical findings to support his finding of Plaintiff having a marked limitation. (*Id.* at p. 36 of 93.) Furthermore, Dr. Flock stated that Dr. Nourian's narrative report did not support the identified limitations. (*Id.* at p. 54 of 93.)

Moreover, the court finds reasonable ALJ's decision to give "little weight" to Dr. Nourian's evaluation, as the medical records are unclear as to whether Dr. Nourian's opinions were based on Plaintiff's psychological impairments or increased weight and chronic back pain. (*See id.* at pp. 34-35 of 93 ("[Plaintiff] has difficulty carrying out instructions, performing activities on schedule and tending a task from beginning to end and sustaining attention, *mostly due to his weight problem and chronic back pain*." (emphasis supplied).) Thus, it appears Dr. Nourian's evaluation is based on Plaintiff's subjective reporting related to his physical ailments, which, for the reasons set forth above, the ALJ found to be exaggerated. *See supra* Part III.C.1.

After thorough analysis, the ALJ determined that Dr. Nourian's opinion was unsupported by empirical information and was inconsistent with other evidence of record. Accordingly, the ALJ found the opinion of Plaintiff's CEP unpersuasive and unsupported by the evidence. The court finds that the ALJ appropriately weighed the credibility of conflicting evidence. *Rutherford*, 399 F.3d at 554. Thus, the court upholds the ALJ's conclusion in this respect, which is supported by substantial evidence.

### 4.    Incomplete Hypothetical

According to Plaintiff, the ALJ also erred in finding that he is not disabled based upon an incomplete hypothetical posed to the vocational expert, inasmuch as the ALJ's hypothetical should have contained further limitations. (Doc. 14, p. 13 of 21.) Specifically, Plaintiff reasons that the ALJ failed to convey that Plaintiff had "'moderate difficulties' with concentration, persistence or pace" (Doc.

14, p. 14 of 21), and thus presented an incomplete representation of Plaintiff's limitations.

In making a RFC determination, the ALJ "must consider all evidence before him." *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Although vocational expert testimony is not required, it may be used in making a determination regarding a plaintiff's RFC because such an expert "may offer relevant evidence . . . concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

Thus, an ALJ may consult a vocational expert to testify in response to hypothetical questions about whether a person suffering from the claimant's medical impairment(s) is capable of performing a substantial gainful activity. *See* 20 C.F.R. § 404.1560(b)(2); *Rutherford*, 399 F.3d at 554. In posing a hypothetical question to a vocational expert, "the ALJ must accurately convey . . . all of a claimant's *credibly established limitations*" as determined in the RFC evaluation. *Diaz*, 440 F. App'x at 72 (emphasis in original); *see also Rutherford*, 399 F.3d at 554 ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." (emphasis in original)). If the hypothetical question does not include "medically undisputed evidence of specific impairments" in the record, then "the expert's response is not considered substantial evidence." *Diaz*, 440 F. App'x at 72 (citing *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)). The hypothetical here was premised on the ALJ's RFC assessment limiting Plaintiff's work to sedentary level work set forth in a stable work environment with a self-directed sit/stand option, with

occasional stooping, crouching, and kneeling, and having the capacity to utilize the upper extremities without restriction, *inter alia*.

The ALJ's RFC assessment was thorough, as it was premised on the level of exertion suitable for Plaintiff, and incorporated the necessity of a self-directed sit/stand option, each of which found support in the record by way of objective medical evidence. Plaintiff claims the ALJ committed error by omitting Plaintiff's alleged psychological impairments as documented by Dr. Nourian and by failing to incorporate the ALJ's own finding that "[Plaintiff] has 'moderate difficulties' with concentration, persistence or pace." (Doc. 4, pp. 13-14 of 21.) Plaintiff argues that the ALJ's failure to incorporate his psychological impairments in the hypothetical constitutes reversible error. The court disagrees.

The ALJ specifically discredited the findings of Dr. Nourian, inasmuch as Dr. Nourian did not identify any abnormal findings from his physical examination of Plaintiff, did not identify medical or clinical support for a finding of a marked limitation, and because it appeared that Dr. Nourian's opinions were based on Plaintiff's self-reports. Thus, the ALJ found that the evidence supporting Plaintiff's characterization of his mental limitations was unpersuasive because it was largely supported by Plaintiff's own subjective complaints, which the ALJ found "not entirely credible." *See Rutherford*, 399 F.3d at 554 ("Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible."). Although Plaintiff points to the unsupported opinions by Dr. Nourian that suggest he had certain moderated and marked difficulties, the ALJ reasonably rejected these opinions, *see supra* Part III.C.3, as based entirely on Plaintiff's self reports, which the ALJ found to be exaggerated, *see supra* Part

III.C.1. Accordingly, the moderate and marked limitations found by Dr. Nourian were reasonably omitted from the ALJ's hypothetical posed to the vocational expert.

Plaintiff also claims that the ALJ "failed to convey the effects of his own findings, averring that the ALJ expressly found that "[Plaintiff has 'moderate difficulties' with concentration, persistence[,] or pace," but that the ALJ omitted these findings from his hypothetical to the vocational expert. (Doc. 14, p. 14 of 21.) Plaintiff argues that doing so presented an incomplete representation of Plaintiff's limitations and "violated the law of this circuit." (*Id.*) The court disagrees.

Plaintiff's argument fails for a fundamental reason, namely that the ALJ did not find that Plaintiff has moderate difficulties with concentration, persistence or pace. Specifically, the ALJ found as follows:

> [Plaintiff] *has had* moderate difficulties with concentration, persistence and pace; *but he has not had any episodes of decompensation of an extended duration.*

(Doc. 10-2, p. 16 of 104 (emphasis supplied).) In his brief, Plaintiff omits the key word "had" and the second clause of the above-quoted sentence. Clearly, the plain language of the ALJ's decision demonstrates that the adjudicator found that Plaintiff previously had moderate difficulties in his ability to sufficiently sustain focused attention commonly found in work settings, but does not demonstrate that the adjudicator found the limitations still existed. Indeed, the evidence of record does not support a finding that Plaintiff had, as of the date he was adjudicated, moderate difficulties with concentration, persistence, or pace. (*See* Doc. 10-7, p. 52 of 93 (containing Dr. Flock's evaluation that Plaintiff had, at most, a mild difficulty in maintaining concentration, persistence, or pace).) Furthermore, the ALJ found that Plaintiff never experienced episodes of decompensation for an extended duration.

Moreover, the ALJ incorporated Plaintiff's limitations by including in the hypothetical the restrictions of simple, routine, sedentary work tasks of an unskilled nature in a stable work environment. Thus, the court cannot conclude that the ALJ failed to incorporate his findings into the hypothetical.

The ALJ's RFC determination appropriately accounted for Plaintiff's mental and psychological limitations by restricting his potential occupations to sedentary and unskilled work involving simple and routine work tasks in a stable work environment subject to no more than an occasional work setting change. Plaintiff's allegations of totally disabling pain were appropriately excluded from the RFC determination because, as discussed above at length, the ALJ properly discredited these claims. *See supra* Part III.C.1. Therefore, the court concludes the hypothetical posed by the ALJ adequately reflected Plaintiff's limitations that were supported by the record. Accordingly, the court will uphold the ALJ's decision in this regard because it is supported by substantial evidence.

## IV.        Conclusion

The ALJ's not crediting Plaintiff's claims was not improper because the objective evidence of record did not support Plaintiff's claims of his experiencing totally debilitating pain rising to the level of disability. Because Plaintiff's treating physician based her opinions on Plaintiff's subjective claims that the ALJ found to be exaggerated rather than on objective medical evidence, the ALJ did not improperly discredit Dr. Rubin's findings. The ALJ did not improperly discredit the testimony of the consultative psychologist, because Dr. Nourian's opinion was unsupported by empirical information and was inconsistent with other evidence of record. Because the ALJ's hypothetical adequately represented all of Plaintiff's

credibly established limitations, the hypothetical was not improper.  Based upon the forgoing, and following a thorough review of the administrative record, the court concludes that the Commissioner's decision denying Plaintiff's application for SSI and DIB benefits is supported by substantial evidence, and will affirm the decision of the Commissioner.

An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  January 2, 2014.